**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-97

UNITED STATES TAX COURT

ADEDAYO ALUBUNKUDI AND O. ADEDOTUN ALUBUNKUDI, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18062-12S.                    Filed September 23, 2014.

Adedayo Alubunkudi and O. Adedotun Alubunkudi, pro se.

Kristina L. Rico, for respondent.

SUMMARY OPINION

WHALEN, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, all section references are to the Internal Revenue Code

in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined tax deficiencies and section 6662(a) penalties for petitioners' taxable years 2009 and 2010. The issue in this case is whether petitioner and his spouse have substantiated the cost of goods sold and certain deductions claimed on Schedules C, Profit or Loss From Business, filed with their joint returns for an activity called OMA Enterprises.

At the outset, we note that petitioner O. Adedotun Alubunkudi separated from her husband approximately 18 months before trial, and she failed to take any action to prepare this case for trial. She also failed to appear, in person or through a representative, when this case was called for trial. As a result, the Court granted respondent's motion to dismiss petitioner O. Adedotun Alubunkudi for lack of prosecution and ordered that a decision as to her would be entered in due course. Accordingly, the only parties to the case at trial were Adedayo Alubunkudi (petitioner) and respondent.

## Background

The parties have stipulated some of the facts and the Court hereby takes the stipulation of facts filed by the parties and the exhibits attached thereto into evidence. Petitioner and his spouse resided in the State of New Jersey at the time they filed their petition.

Petitioner and his spouse timely filed joint Forms 1040, U.S. Individual Income Tax Return, for 2009 and 2010. Both returns stated that petitioner was a "software engineer" and that his spouse was a "nurse." The returns reported aggregate wages of $190,008 and $175,442 for the years in issue, respectively. The returns also reported net losses from four rental properties of $9,211 and $3,646, respectively.

The subject returns included Schedules C for OMA Enterprises on which petitioner and his spouse reported net losses of $58,430 and $36,644, respectively. The business of OMA Enterprises involved the purchase of damaged automobiles and the restoration of those automobiles for resale. OMA Enterprises was allegedly conducted solely by petitioner.

The Schedules C for OMA Enterprises reported the following revenue and expenses:

| Schedules C for OMA Enterprises | 2009 | 2010 |
|---|---|---|
| Gross receipts | $16,854 | $20,312 |
| Cost of goods sold | 57,850 | 23,294 |
| Gross profit | -40,996 | -2,982 |
| Other income | -0- | -0- |
| Gross income | -40,996 | -2,982 |

| | | |
|---|---:|---:|
| Advertising | 315 | 431 |
| Car and truck expenses | 7,314 | 15,399 |
| Depreciation and sec. 179 expense deduction | -0- | 4,595 |
| Legal and professional services | 1,541 | 3,633 |
| Office expense | 3,161 | 4,813 |
| Supplies | 4,623 | 4,311 |
| Other expenses (Internet) | 480 | 480 |
| Total expenses | 17,434 | 33,662 |
| Net profit or (loss) | -58,430 | -36,644 |

After reviewing the records for this activity submitted during the audit of petitioner and his spouse's returns, respondent determined in the notice of deficiency, among other adjustments, that those records were "incomplete and inadequate" to substantiate the cost of goods sold reported on the Schedules C. Accordingly, respondent recomputed the gross profit from the activity by applying industry averages (i.e., 24.03% for 2009 and 24.51% for 2010) to the gross receipts reported. Respondent then determined the cost of goods sold by subtracting the recomputed gross profit from gross receipts. The following schedule shows that computation.

|                                                                        | 2009     | 2010     |
| ---------------------------------------------------------------------- | -------- | -------- |
| Gross receipts (per return)                                            | $16,854  | $20,312  |
| Gross profit percentage (industry average)                             | 24.03%   | 24.51%   |
| Recomputed gross profit                                                | $4,050   | $4,978   |
| Cost of goods sold (i.e., gross receipts less recomputed gross profit) | $12,804  | $15,334  |

In effect, respondent allowed costs of goods sold of $12,804 for 2009 and $15,334

for 2010.  The amount disallowed for each year is computed as follows:

|                               | 2009    | 2010    |
| ----------------------------- | ------- | ------- |
| Cost of goods sold (as reported) | $57,850 | $23,294 |
| Amount allowed                | 12,804  | 15,334  |
| Amount disallowed             | 45,046  | 7,960   |

As to the deductions claimed on the Schedules C for OMA Enterprises,

respondent disallowed, for lack of substantiation, the deductions for car and truck

expenses, depreciation and section 179 expenses, legal and professional services,

and office expenses, in the aggregate amounts of $12,016 for 2009 and $28,440

for 2010.  Respondent allowed the deductions claimed on each Schedule C for

advertising, supplies, and Internet expenses, in the aggregate amounts of $5,418 for 2009 and $5,222 for 2010.

In the notice of deficiency respondent determined total adjustments of $75,523 to petitioner and his spouse's return for taxable year 2009 and total adjustments of $53,638 to their return for taxable year 2010. The adjustments determined in the notice of deficiency are set forth below:

| | 2009 | 2010 |
|---|---|---|
| Schedule E4 real estate loss after passive limitation | $3,758 | $1,414 Consequent adj. |
| Schedule E3 real estate loss after passive limitation | 2,419 | 962 Consequent adj. |
| Schedule E2 real estate loss after passive limitation | 1,453 | 571 Consequent adj. |
| Schedule E1 real estate loss after passive limitation | 1,581 | 699 Consequent adj. |
| Schedule C1 business selling reconditioned cars | | |
| - Office expense | 3,161 | 4,813 Substantiation |
| - Legal and professional expenses | 1,541 | 3,633 Pet. conceded at trial |
| - Car and truck expenses | 7,314 | 15,399 Substantiation |
| - Cost of goods sold | 45,046 | 7,960 Substantiation |
| - Depreciation and sec. 179 expense | | 4,595 Substantiation |
| Student loan interest deduction | 1,381 | 844 Consequent adj. |
| Itemized deductions--home mortgage interest and points | 7,869 | 10,748 Resp. concedes |

| | | | |
|---|---|---|---|
| Tuition and fees deduction | | 2,000 | Consequent adj. |
| Total adjustments | 75,523 | 53,638 | |

The decision in this case turns on the adjustments to the Schedules C that are designated "Substantiation" in the above schedule.

## Discussion

Generally, a taxpayer must show entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).[1] A taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, but the taxpayer must maintain sufficient records to substantiate the expenses claimed. Secs. 162(a), 6001; sec. 1.6001-1(a), Income Tax Regs. The taxpayer bears the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd, 540 F.2d 821 (5th Cir. 1976). This requires the taxpayer to show the amount and purpose of any items claimed as deductions. See id. Deductions are not allowed for personal, living, or family expenses. Sec. 262(a).

Section 274(d) imposes strict substantiation requirements for expenses relating to, among other things, travel, entertainment, and "listed property",

---

[1] We need not discuss the burden-shifting provisions of sec. 7491(a) because, in this case, there is nothing to suggest that those provisions apply, and petitioner has made no claim that they do.

including automobiles and other property used as a means of transportation. Sec. 280F(d)(4); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). To deduct such items, the taxpayer must substantiate "by [either] adequate records or by sufficient evidence corroborating * * * [his] own statement" the amounts of such expenses, their business purpose, and the business relationship to the taxpayer of the person using the property. Sec. 274(d); Beale v. Commissioner, T.C. Memo. 2000-158; sec. 1.274-A(b)(1), Income Tax Regs. To meet the "adequate records" test a taxpayer must maintain an account book, a diary, a log, a statement of expense, trip sheets, or similar records prepared contemporaneously with the expenditure, and documentary evidence of certain expenditures, such as receipts or bills. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). In combination, these records must be sufficient to establish each element of the expenditure for which a deduction is sought, i.e., amount, time and place, business purpose, and business relationship.

Cost of goods sold is an adjustment to gross income and is computed with proper adjustment for opening and closing inventories for the year. See secs. 1.61-3(a), 1.162-1(a), Income Tax Regs. Technically, it is not treated as a deduction from gross income, and it is not subject to the limitations on deductions in sections

162 and 274.  See  Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); B.C. Cook & Sons, Inc. v. Commissioner, 65 T.C. 422, 428 (1975), aff'd per curiam, 584 F.2d 53 (5th Cir. 1978); secs. 1.61-3(a), 1.162-1(a), 1.471-3, Income Tax Regs.  The taxpayer must substantiate the amount claimed as cost of goods sold, and the taxpayer must maintain sufficient records for that purpose.   Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. 438, 440 (2001); Rodriguez v. Commissioner, T.C. Memo. 2009-22; Said v. Commissioner, T.C. Memo. 2003-148, aff'd, 112 Fed. Appx. 608 (9th Cir. 2004).

Before we discuss petitioner and his spouse's eligibility for the costs of goods sold and the deductions claimed on the subject Schedules C for OMA Enterprises, several general observations about their evidence are appropriate. The first observation deals with the invoices that petitioner submitted to substantiate the tax benefits claimed on the Schedules C.  All of those invoices are attached to the Stipulation of Facts in one of three exhibits to that stipulation. Taken together, the invoices purport to show purchases during 2009 and 2010 aggregating approximately $212,161.78.

Those invoices raise more questions than they answer.  For example, the invoices for 2009 show purchases totaling $135,785.12, whereas the aggregate cost of goods sold and deductions claimed on the Schedule C for 2009 is $75,284,

or $60,501.12 less than the total invoices for 2009. Similarly, the invoices for 2010 show purchases totaling $76,376.66 whereas the aggregate costs of goods sold and deductions claimed on the Schedule C for 2010 is $56,956, or $19,420.66 less than the total invoices for 2010. In summary, petitioner submitted invoices totaling $212,161.78 to substantiate deductions and costs of goods sold totaling $132,240.

We are at a loss to understand the nature of the excess invoices totaling $79,921.78. Petitioner has not asked to be allowed deductions and/or costs of goods sold in excess of the amounts claimed on the Schedules C. Furthermore, each Schedule C states that it was prepared using the cash method of accounting. We are unaware of any reason for a timing difference between the invoice year and the time a particular expenditure is taken into account for tax purposes.

A second observation about petitioner's evidence is the fact that petitioner introduced no books or records for OMA Enterprises, and there is nothing in the record that ties a specific invoice or invoices to the amount claimed on a particular line of either Schedule C. This problem was discussed at trial as follows:

> THE COURT: Do you have anything that shows the composition of each of the expenses that were claimed on your Schedule C?
> MR. ALUBUNKUDI: I didn't understand what you say, sir.

> *       *       *       *       *       *       *

THE COURT: Well, on Schedule C you claimed an office expense in 2009 of $3,161. Do you have anything that shows what were the amounts that you deducted as part of that $3,161?

Petitioner could not answer the Court's concern, and the record provides no way to tie the invoices petitioner produced to the cost of goods sold and business deductions claimed on the Schedules C.

Petitioner's testimony at trial about the conduct of his business was vague and confusing. Petitioner initially testified that he had purchased damaged cars from a company called Copart, Inc.: "I buy used cars from a place called Copart, cars that has an accident. When I buy them, I go to junkyard to buy the parts and fix it in order to resell it."

Petitioner then testified that he had actually purchased the damaged cars through another company, Sanchase Auto. Petitioner explained that Sanchase Auto had a "license" to buy cars from Copart and Sanchase Auto allowed him to use its license. Petitioner referred to two receipts issued by Sanchase Auto to "Wally A Akanji." One receipt, dated June 3, 2009, is for the purchase of 7 cars in the aggregate amount of $33,135, and a second receipt, dated December 3, 2010, is for the purchase 10 cars in the aggregate amount of $55,360.

After that, petitioner testified: "When I bid for car, I went for the car, then I go to Copart and pay with my money." Thus, he seemed to contradict himself by

stating that he paid Copart for the cars, not Sanchase Auto. According to petitioner, he paid Copart with cashier's checks obtained from Bank of America. He explained: "That's the only way you can pay to Copart." If petitioner paid Copart for the cars, we do not understand the purpose of the invoices from Sanchase Auto.

Petitioner explained that he kept copies of the cashier's checks used to pay Copart in a briefcase in his personal car but they were lost when the briefcase was stolen from his automobile. According to petitioner, he used cash to purchase the cashier's checks from Bank of America. Petitioner did not explain why he chose to pay for the cashier's check with cash instead of simply causing the money for the cashier's checks to be withdrawn from his Bank of America account. In any event, petitioner is now unable to show that he purchased any of the cashier's checks that he claims to have given to Copart. In passing, we note that the Court had continued this case from a prior calendar for the express purpose of giving petitioner additional time to obtain bank documents.

We find curious another aspect of petitioner's testimony about the business of OMA Enterprises. The record contains invoices dated during 2009 for the purchase of 11 cars through Copart by another company called Discount Motors, Inc., in Washington, D.C. These 11 invoices total $90,689.98. Petitioner did not

mention these invoices during his testimony or explain what connection, if any, he had to Discount Motors, Inc. None of these invoices is in petitioner's name and, as with the Sanchase Auto invoices, there is nothing in the record to show that petitioner paid the invoices or purchased any of the automobiles described in the invoices.

Cost of Goods Sold

As discussed above, respondent determined in the notice of deficiency that the records submitted during petitioner and his spouse's audit were "incomplete and inadequate" and did not substantiate the costs of goods sold reported on the Schedules C for OMA Enterprises. As a result, respondent recomputed the gross profit for the business using industry averages and adjusted the costs of goods sold in accordance with that computation. Petitioner and his spouse bear the burden of showing that respondent's adjustments to the costs of goods sold are wrong and that they are entitled to claim more than the amounts respondent allowed . See Rule 142.

Petitioner's description of the business of OMA Enterprises suggests that the cost of goods sold for the business would consist of the cost of the damaged automobiles and the parts used to repair them. As discussed above, the invoices submitted are not sufficient to prove that petitioner purchased any such goods.

Furthermore, petitioner's testimony was vague and contradictory. On the basis of the record in this case, we find that petitioner and his spouse have not substantiated cost of goods sold for either year in excess of the amount respondent allowed.

Office Expenses

On the Schedules C for OMA Enterprises, petitioner and his spouse claimed deductions for office expenses of $3,161 for 2009 and $4,813 for 2010. As mentioned above, petitioner was unable to show the Court which of the invoices correspond to the expenditures reported as office expenses. Nevertheless, using the invoices and petitioner's testimony, the Court has identified the following invoices for purchases that appear to have been classified as office expenses:

| Date | Description | Amount |
|---|---|---|
| June 1, 2009 | Dell Inspiron 1545 Laptop | $404.46 |
| June 7, 2009 | Dell Vostro A860 Laptop | 548.91 |
| Total | | 953.37 |
| May 27, 2010 | Dell Photo A/O 926 Printer Dell 2155 cdn Multifunction Printer | 623.81 |
| May 27, 2010 | Dell Laptop Inspiron 17 Laptop | 1,603.93 |
| May 30, 2010 | Dell Inspiron 1501 Laptop | 890.24 |

| 2010 | Oscar's Carpet One | 48.15 |
|---|---|---|
| | Total | 3,166.13 |

The above invoices purport to show expenditures of $953.37 in 2009 and $3,166.13 in 2010. According to these invoices, petitioner purchased two laptop computers in 2009, two laptop computers in 2010, two printers in 2010, and something from Oscar's Carpet One in 2010. As to those expenditures, petitioner's testimony about what type of computers he purchased was confusing. The invoices show that he purchased four laptops whereas petitioner testified that he purchased two desktops and one laptop. We find the above invoices and petitioner's testimony to be insufficient to substantiate the deduction for office expenses claimed for each of the subject years.

Depreciation

On the Schedule C for OMA Enterprises for 2010, petitioner and his spouse claimed a deduction for depreciation and section 179 expense of $4,595. Section 179 provides that a taxpayer may elect to treat the cost of any section 179 property as an expense which is not chargeable to a capital account. If a taxpayer makes this election, the cost shall be allowed as a deduction for the taxable year in which the section 179 property is placed in service. Sec. 179(a). Section 179 property is defined in pertinent part as "tangible property", which is section 1245 property (as

defined in section 1245(a)(3)) and which is acquired by purchase for use in the active conduct of a trade or business. Sec. 179(d)(1).

According to the Form 4562, Depreciation and Amortization (Including Information on Listed Property), and the depreciation schedule filed with petitioner and his spouse's return, the subject deduction for the costs of a "Computer", purchased for $943 on February 1, 2010, and "Equipment", purchased for $3,652 on January 15, 2010. The record contains no further description of these assets. At trial, petitioner stated that the items must be "spare car parts". Petitioner then concluded: "I'm not sure." We find that petitioner and his spouse have not met the burden of proving that respondent's disallowance of this deduction was wrong.

Car and Truck Expenses

On the Schedules C for OMA Enterprises, petitioner and his spouse claimed deductions for car and truck expenses of $7,314 for 2009 and $15,399 for 2010. There is no other mention of these car and truck expenses in the record of this case, except for the statement in the stipulation of facts that "[p]etitioners did not provide documents, such as contemporaneous mileage log, in an attempt to substantiate 'Car and Truck' expenses." Because there is nothing in the record to substantiate these expenses, we find that petitioner and his spouse have not

established entitlement to the car and truck expense deduction claimed on the subject returns.

Legal and Professional Services

On the Schedules C for OMA Enterprises, petitioner and his spouse claimed deductions for legal and professional services of $1,541 for 2009 and $3,633 for 2010. Petitioner conceded these deductions at trial.

Accuracy-Related Penalty Under Section 6662(a)

Respondent determined in the notice of deficiency that the underpayments of tax in this case are attributable to negligence or disregard of rules or regulations, or to substantial understatements of income tax. Accordingly, respondent added to the tax deficiencies accuracy-related penalties imposed by section 6662(a).

Under section 6662(a) and (b)(1) and (2) a taxpayer may be liable for a penalty of 20% of the portion of an underpayment of tax due to negligence or disregard of rules or regulations, or due to any substantial understatement of income tax. The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Internal Revenue Code; this may include a failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has

also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). In the case of an individual, the phrase "substantial understatement of income tax" is defined as an understatement that exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A).

Normally, the Commissioner bears the burden of production with respect to the liability of an individual taxpayer for the accuracy-related penalty. Sec. 7491(c). To meet that burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner meets the burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); see Higbee v. Commissioner, 116 T.C. at 446-447. The taxpayer may meet this burden by proving that he acted with reasonable cause and in good faith. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.

Petitioner and his spouse failed to take issue in the petition with respondent's determination in the notice of deficiency imposing accuracy-related penalties under section 6662(a).  Furthermore, petitioner did not take issue with the penalties at trial.  He made no mention of them.  In Funk v. Commissioner, 123 T.C. 213, 218 (2004), the Court stated:

> where a petition fails to state a claim in respect of penalties, additions to tax, and/or additional amounts, the Commissioner incurs no obligation to produce evidence in support of such determinations pursuant to section 7491(c).  See, e.g., Parker v. Commissioner, 117 F.3d 785, 787 (5th Cir. 1997) (the Commissioner has no obligation to investigate (or produce evidence with respect to) a third-party payment report that is not disputed by the taxpayer).

Respondent argues that he has no burden under section 7491(c) to produce evidence that the section 6662(a) penalties are appropriate because petitioner and his spouse are deemed to have conceded the penalties by failing to assign error to them in the petition and by failing to raise an issue about them at trial.  See id.; Swain v. Commissioner, 118 T.C. 358, 363-364 (2002).

We need not decide that issue because there is more than enough evidence to show that accuracy-related penalties under section 6662(a) should be imposed in this case.  For example, as discussed above, petitioner and his spouse failed to keep adequate books and records and failed to properly substantiate expenses relating to the cost of goods sold and deductions claimed.  Thus, it is clear, for

purposes of section 6662(b)(1), that all of each underpayment is due to negligence, and we so find.  Furthermore, alternatively, even though the exact amounts of the underpayments will depend upon Rule 155 computations, taking into account our findings and conclusions herein, it appears to be the case that, for purposes of section 6662(b)(2), there is a substantial understatement of income tax for both 2009 and 2010.

Notwithstanding the above findings, no penalty will be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.  See sec. 6664(c).  Whether a taxpayer acted in good faith depends upon the facts and circumstances of each case.  See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner did not explicitly argue reasonable cause and good faith. Nevertheless, on occasion during his testimony, he mentioned the fact that he had retained a return preparer to prepare the tax returns.  Reliance on a professional return preparer may constitute reasonable cause and good faith if the taxpayer establishes:  (1) the return preparer had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the return preparer; and (3) the taxpayer actually relied in good faith on the return preparer's

judgment.  E.g., Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Apart from passing references in petitioner's testimony to the tax return preparer, the record is devoid of any evidence to support a finding that any reliance by petitioner and his spouse on a return preparer was reasonable and in good faith.  Petitioner did not call the tax return preparer as a witness.  There is no evidence as to the advice the tax return preparer might have given; no evidence to support a determination that petitioner and his spouse acted reasonably or in good faith in relying upon it; no evidence about the tax return preparer's qualifications; no evidence that all relevant facts and circumstances were disclosed to the tax return preparer; and no evidence that the advice was based on reasonable factual or legal assumptions.  See id.  More fundamentally, petitioner and his spouse have not shown reasonable cause for the failure to keep adequate records to substantiate expenses relating to the claimed deductions.  Accordingly, we hold petitioner and his spouse liable for section 6662(a) penalties for negligence and, alternatively, for substantial understatements of income tax insofar as the Rule 155 computations show any.

On the basis of the above concessions by the parties,

<u>Decision will be entered under</u>

<u>Rule 155</u>.