T.C. Summary Opinion 2010-47

UNITED STATES TAX COURT

MARY A. SCOTT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8717-09S.                    Filed April 15, 2010.

Mary A. Scott, pro se.

<u>Anne M. Craig</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's 2005 Federal income tax of $2,883. The issues for decision are: (1) Whether petitioner is entitled to deductions for unreimbursed employee business expenses, and (2) whether petitioner is entitled to a deduction for tax preparation fees.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. Petitioner resided in the State of Florida when the petition was filed.

During 2005 petitioner worked as an international flight attendant for Continental Airlines (Continental).[2] Petitioner began working for Continental in 1986. All of petitioner's working flights originated in Newark, New Jersey. Petitioner has lived with her daughter in the metropolitan area of Tampa, Florida, for about 17 years in order for her daughter to be closer to her grandparents.

Because petitioner's flights abroad originated in Newark, petitioner drove to Tampa International Airport, parked her car

---

[2] Although petitioner was an international flight attendant, she had one flight which landed in Honolulu, Hawaii. Petitioner explained that the airline industry treats Hawaii as international because it is outside the continental United States.

in a fee lot, and commuted by a Continental flight to Newark either in a jump seat or regular seat. When petitioner returned from her working flight she commuted back to Tampa via a Continental flight. During the flights between Tampa and Newark petitioner did not work as a flight attendant but rather flew as a passenger. Typically petitioner flew on these flights free of charge, but if she flew in a regular seat, as opposed to a jump seat, Continental charged a "trip pass" fee. On several occasions no seat was available on the flight from Newark to Tampa, so petitioner flew from Newark to Orlando, Florida, where she would rent a car and drive to Tampa International Airport in order to retrieve her car. On the occasion that petitioner worked back-to-back trips, she would rent a hotel room in Newark so that she could sleep between her flights. Petitioner also rented a hotel room in Newark when she attended training sessions there.

Upon arrival at an international location, Continental provided transportation from the airport to the hotel for petitioner and her fellow crew members. Although the hotel and transportation were paid for by Continental, the crew members were expected to tip the van drivers at their own expense.

Petitioner's layover in an international location was typically 1-1/2 to 2-1/2 days. During the layovers petitioner incurred various meal and incidental expenses that were not

reimbursed by Continental, including the tips to the van drivers. Instead, Continental provided a per diem allowance that was paid to petitioner via her paycheck. Petitioner's final pay stub for 2005 shows a year-to-date per diem allowance of $6,206.76. This final pay stub also shows year-to-date amounts for "FA Union Dues" of $510 and "trip pass" fees of $170.

The Continental "Inflight Policies & Procedures Manual" highlights the duties and responsibilities of flight attendants. Flight attendants are required to carry the following items while on duty: flashlight, alarm clock, wristwatch, and pen. Although uniforms are provided by Continental, they are to be clean and in good repair. Female flight attendants are required to wear plain black shoes and pantyhose. Luggage used by a flight attendant is to be company approved and solid black in color. A flight attendant's hair must be clean and well kempt, and hands and fingernails must be clean and well manicured. Finally, the manual indicates that crew scheduling functions and company services are available via telephone and through the Internet from both base and home computers.

In 2005 petitioner paid $135 to have her 2004 Federal income tax return prepared.

Petitioner timely filed her 2005 Form 1040, U.S. Individual Income Tax Return, which was completed by a professional tax preparer. As relevant herein, petitioner's 2005 return includes

a Schedule A, Itemized Deductions; a Form 2106, Employee Business Expenses; and a three-page list of statements.  On her Schedule A, petitioner claimed, inter alia, a deduction for unreimbursed employee business expenses of $20,813 and a deduction for tax preparation fees of $135.  The Schedule A entry for unreimbursed employee business expenses also includes the notation "See Statement 2".  Statement 2 describes the unreimbursed employee business expenses as follows:

| Description | Amount |
|---|---|
| Union and professional dues | $510 |
| Uniforms and protective clothing | 1,929 |
| From Form 2106 | 18,374 |
| Total | 20,813 |

The amount for uniforms and protective clothing consists of: $490 for uniforms (i.e., shoes and luggage), $399 for dry cleaning and uniform maintenance, $520 for hair and nail maintenance, and $520 for pantyhose.

On her Form 2106 petitioner reported her expenses as follows:

| Description | Amount |
|---|---|
| Vehicle expenses | -0- |
| Parking fees, tolls, and transportation not involving overnight travel or commuting to and from work | $1,111 |
| Travel expenses while away from home | 4,001 |
| Other business expenses | 275 |
| Meals and entertainment | 24,760 |

The amount for parking fees, tolls, and transportation is the cost petitioner paid to park at Tampa International Airport. The travel expenses while away from home include:  tips to van drivers of $640; telephone and cellular phone charges of $1,580; hotel bills of $555; taxi and local transportation costs while on layovers to go to restaurants and shops of $1,275; "trip pass" fees of $170; car rentals of $253; and Internet costs of $1,588. The other business expenses include costs for a flashlight, pens, batteries, and other required travel items.

The Form 2106 also reflects reimbursements petitioner received from Continental of $6,207.  After taking into account the reimbursements and a 70-percent allowance factor for employees subject to U.S. Department of Transportation (DOT) hours of service limits,[3] Line 10 on this form indicates a total deduction of $18,374, which amount the form instructs to be entered on Line 20 of Schedule A.  However, petitioner's Line 20 of Schedule A also included the additional amounts as listed in Statement 2.

In a notice of deficiency, respondent disallowed the deduction for unreimbursed employee business expenses and the deduction for tax preparation fees.

---

[3]  The 2005 Instructions for Form 2106, at 3, state: "Employees subject to the DOT hours of service limits include certain air transportation employees, such as pilots, [and] crew".

## Discussion

I. Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has neither alleged that section 7491(a) applies nor established her compliance with its requirements. Accordingly, petitioner bears the burden of proof. See Rule 142(a).

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Commissioner, 292 U.S. 435, 440 (1934). This burden requires the taxpayer to substantiate claimed deductions by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction

relates has been paid or incurred. See sec. 6001; Hradesky v. Commissioner, supra; sec. 1.6001-1(a), Income Tax Regs.

If the taxpayer establishes that she has incurred a deductible expense yet is unable to substantiate the exact amount, the Court may estimate a deductible amount, but may bear heavily against the taxpayer whose inexactitude is of her own making. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

However, the Court cannot estimate a taxpayer's expenses with respect to the items enumerated in section 274(d). Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); Rodriguez v. Commissioner, T.C. Memo. 2009-22 (strict substantiation requirements of section 274(d) preclude the Court and taxpayers from approximating expenses subject to that section). Section 274 requires strict substantiation for any traveling expense under section 162 and listed property such as cellular telephones. See sec. 280F(d)(4). Section 274(d) and the regulations thereunder require taxpayers to substantiate their deductions by adequate records or sufficient evidence establishing the amount, time,

place, and business purpose of the expense to corroborate the taxpayer's own testimony. See sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In the absence of evidence establishing the elements of the expenditure or use, deductions must be disallowed entirely. Sec. 274(d); Sanford v. Commissioner, supra; see also sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

II. Unreimbursed Employee Business Expenses

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The term "trade or business" as used in section 162(a) includes the trade or business of being an employee. Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943). In general, an expense is ordinary if it is considered normal, usual, or customary in the context of the particular business out of which it arose. Deputy v. du Pont, 308 U.S. 488, 495 (1940). Generally, an expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). On the other hand, section 262(a) generally

disallows a deduction for personal, living, or family expenditures.

For employees in the transportation industry, the Internal Revenue Service publishes an annual revenue procedure that offers an exception to the above substantiation requirements for meals and incidental expenses (M&IE) incurred by an employee while traveling away from home. See Rev. Proc. 2005-10, sec. 4.04, 2005-1 C.B. 341, 343. Under the exception, transportation industry employees whose employer provides a per diem allowance may deduct their meals using the published Federal M&IE rate, in lieu of claiming actual expenses and maintaining records. Id.

For unreimbursed employee business expenses, the initial inquiry is whether the taxpayer received reimbursement or had the right to receive reimbursement from his employer. Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), affg. T.C. Memo. 1984-533. In other words, a taxpayer may not deduct unreimbursed expenses if the employee fails to seek reimbursement for work-related expenses. See Leamy v. Commissioner, 85 T.C. 798, 810 (1985); Podems v. Commissioner, 24 T.C. 21, 23 (1955). Petitioner received reimbursement for M&IE while on layovers abroad of $6,207; the remainder of petitioner's expenses were not reimbursed, nor was petitioner eligible for reimbursement.

A.  Union and Professional Dues

Petitioner claimed an unreimbursed employee business expense deduction for union dues of $510.  Petitioner's final pay stub for 2005 shows a year-to-date amount for union dues of $510. Therefore, petitioner is entitled to a deduction for union dues of $510.  See sec. 162(a); secs. 1.162-15(c), 1.162-20(c)(3), Income Tax Regs.

B.  Uniforms and Protective Clothing

Petitioner claimed an unreimbursed employee business expense deduction for uniforms and protective clothing of $1,929, which includes amounts for shoes, luggage, and pantyhose; dry cleaning and uniform maintenance; and hair and nail maintenance.

Expenses for uniforms are deductible if the uniforms are of a type specifically required as a condition of employment, the uniforms are not adaptable to general use as ordinary clothing, and the uniforms are not worn as ordinary clothing.  Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); Wasik v. Commissioner, T.C. Memo. 2007-148; Beckey v. Commissioner, T.C. Memo. 1994-514.

As a condition of her employment, petitioner was required to wear a uniform provided by Continental.  Petitioner was also required to wear plain black shoes and pantyhose, and use approved luggage.  Petitioner testified that she would never wear pantyhose or her work shoes in her "real life"; nevertheless the

shoes and pantyhose are adaptable to general use as ordinary clothing.

Petitioner provided one legible receipt for a purchase of $63.78 at Luggage Servicing, Inc.[4]  In light of the number of trips petitioner flew for Continental in 2005, it is clear that petitioner's use of the luggage for work was more than merely incidental, thus, its expense is deductible.

Therefore, of the amounts deducted for uniforms ($499) and pantyhose ($520), petitioner is entitled to a deduction of $63.78; the remaining amounts were expended for personal purposes and as such are not deductible.  See sec. 262(a).

If the cost of acquiring clothing is deductible, then the cost of maintaining the clothing is also deductible.  See Fisher v. Commissioner, 23 T.C. 218, 225 (1954), affd. 230 F.2d 79 (7th Cir. 1956).  Had petitioner been required to purchase the Continental uniforms (i.e., slacks, skirt, blouse, jacket), such expenses would have been deductible as the uniforms were not adaptable to general use as ordinary clothing.  See Yeomans v. Commissioner, supra.  Petitioner claimed a deduction of $399 for dry cleaning and uniform maintenance, but provided only four receipts for dry cleaning, two of which appear to be for non-

_____

[4] A second receipt in the record that purports to be for luggage is illegible and, therefore, of no use to the Court.

work-related attire.[5]  However, we are satisfied that petitioner did incur some expenses for dry cleaning and uniform maintenance. Accordingly, exercising our discretion, but bearing heavily against petitioner who bears sole responsibility for any inexactitude, see Cohan v. Commissioner, 39 F.2d at 544, we hold that petitioner is entitled to a deduction for dry cleaning and uniform maintenance of $200.

Grooming expenses (i.e., hair and nail maintenance) are inherently personal expenses, and amounts expended for grooming are not deductible regardless of whether an employer requires an employee to be well groomed.  Hynes v. Commissioner, 74 T.C. 1266, 1292 (1980).  Accordingly, petitioner is not entitled to a $520 deduction for grooming expenses.

In sum, of the $1,929 petitioner claimed as a deduction for uniforms and protective clothing, petitioner is entitled to a deduction of $263.78.

C.  Parking Fees, Tolls, and Transportation

Petitioner claimed $1,111 on her Form 2106 for parking fees, tolls, and transportation expenses that did not involve overnight

---

[5]  The first receipt is an item drop-off summary dated July 8, showing an amount of $7.60 and listing two items:  brown cotton skirt and white slacks.  The Court notes that the Continental flight attendant's uniform does not consist of these items.  The second receipt is a sales receipt dated July 14, showing a total of $7.60, which date and amount seem consistent with the drop-off receipt for the brown cotton skirt and white slacks.

travel or commuting to and from work.  Petitioner explained that this amount represents the cost of parking her car at Tampa International Airport.  It is well settled that parking fees a taxpayer incurs as a part of his or her commute are nondeductible personal expenses.  See sec. 262; see also Commissioner v. Flowers, 326 U.S. 465, 470 (1946); Anderson v. Commissioner, 60 T.C. 834, 835 (1973).  Accordingly, petitioner may not deduct parking expenses.

D.  Travel Expenses

On her Form 2106 petitioner claimed $4,001 for travel expenses while away from home overnight.  Petitioner explained that this amount includes:  telephone and cellular phone charges of $1,580; Internet costs of $1,588; hotel costs of $555; "trip pass" fees of $170; car rentals of $253; taxis and local transportation while on layovers of $1,275; and tips to van drivers of $640.

1.  Telephone, Cellular Phone, and Internet Costs

Petitioner stated that flight attendants are required to have a phone in order for Continental to contact them regarding schedule changes.  However, basic service on the first telephone line in a taxpayer's residence is deemed a nondeductible personal expense.  Sec. 262(b).  Petitioner has neither alleged that she used a dedicated line for her Continental activities nor shown that her telephone expenses were more than the basic service on a

first telephone line.  Thus, she is not entitled to any deduction for the use of the telephone in her home.

Cellular telephones are included in the definition of listed property, sec. 280F(d)(4)(A)(v), and are subject to the strict substantiation requirements of section 274(d).  Petitioner has not introduced evidence sufficient to substantiate the expense and use of her cellular telephone, and, in fact, only provided one cellular telephone bill for the period of November 2007. Further, petitioner did not demonstrate that any business use of her cellular telephone was other than incidental.[6]  Accordingly, petitioner is not entitled to a deduction for cellular telephone expenses for 2005.

Petitioner stated that flight attendants are required to have Internet access in order to bid on schedules or for Continental to contact them in the event of a schedule change. Petitioner deducted $1,588 for Internet expenditures, but the record includes only one statement, dated December 4, 2007, with handwritten notations indicating an Internet access cost of approximately $33 per month, or $396 for the year.

The Court has characterized Internet expenses as utility expenses.  Verma v. Commissioner, T.C. Memo. 2001-132.  Strict substantiation therefore does not apply, and the Court may

---

[6]  Petitioner testified that she did not use her cellular telephone in foreign countries because it was too expensive to do so and Continental knew how to reach her at the hotel if need be.

estimate petitioner's deductible expenses, provided that the Court has a reasonable basis for making an estimate. <u>Cohan v. Commissioner</u>, <u>supra</u> at 544; see <u>Vanicek v. Commissioner</u>, 85 T.C. at 742-743 (an estimate must have a reasonable evidentiary basis); <u>Pistoresi v. Commissioner</u>, T.C. Memo. 1999-39. Petitioner has not demonstrated that her business use of the Internet was other than incidental, nor has petitioner presented any evidence upon which the Court can make a reasonable estimate of its costs. Therefore, petitioner is not allowed a deduction for costs associated with Internet access.[7]

### 2. Commuting Expenses Between Tampa and Newark

Petitioner deducted expenses for hotels in Newark, "trip pass" fees for flights between Florida and Newark, and car rentals for renting cars in Orlando and driving back to Tampa to retrieve her car. These are essentially commuting expenses as Continental treated petitioner as if she lived in Newark and petitioner made a personal choice to live in Tampa. See <u>Commissioner v. Flowers</u>, <u>supra</u> at 473-474. It is clear that, as a matter of law, a taxpayer's cost of commuting between the taxpayer's personal residence and place of employment, <u>no matter how far</u>, is a nondeductible personal expense. <u>Id.</u>; secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs. Accordingly, petitioner is

---

[7] We note that Continental provided free Internet access to petitioner at her home base in Newark.

not entitled to a deduction for hotel costs in Newark, "trip pass" fees, and car rental expenses.

   3.  Transportation Expenses While on Layovers Abroad

Petitioner deducted $1,275 for taxis and local transportation while on layovers abroad and $640 for tips to the drivers of the airport transfer vans.  As discussed infra, these expenses are included in petitioner's per diem allowance for M&IE.  "If an employee * * * computes the amount allowable as a deduction for meal and incidental expenses for travel away from home in accordance with * * * this revenue procedure * * * no other deduction is allowed to the employee * * * with respect to those expenses."  Rev. Proc. 2005-10, sec. 6.06, 2005-1 C.B. at 348.  Accordingly, petitioner is not entitled to a deduction for transportation expenses while abroad in addition to the deduction for M&IE discussed infra.

   E.  Other Business Expenses

Petitioner deducted $275 for supplies/equipment, including a flashlight, batteries, pens, and other required travel items such as an alarm clock and wrist watch.  Assuming arguendo that these items are deductible, but see sec. 262(a) (proscribing generally any deductions for personal, living, or family expenses), petitioner has not demonstrated that any such items were acquired in the year in issue or, if so, the amount paid.  Accordingly,

petitioner is not entitled to a deduction for other business expenses.

F.  Meals and Incidental Expenses--Per Diem Allowance

Petitioner claimed $24,760 on her Form 2106 for M&IE.  She reduced this amount by the per diem allowance paid by Continental of $6,207 and then deducted 70 percent (as an employee subject to DOT hours of service limits), or $12,987.  Petitioner presented documents from her tax return preparer that suggest the amount of M&IE should have been $18,587 reduced by the per diem allowance paid by Continental of $6,207 and deducted at a rate of 70 percent, or $8,666.

As mentioned supra, the Commissioner is authorized to prescribe rules under which certain types of expense allowances, including per diem allowances for ordinary and necessary expenses for traveling away from home, will be regarded as satisfying the substantiation requirements of section 274(d).  Sec. 1.274-5(j), Income Tax Regs.  Under this authority, the Commissioner issued Rev. Proc. 2005-10, supra, which provides rules for using a per diem method to substantiate amounts of meals and incidental expenses.  The term "incidental expenses" includes "fees and tips given" to various individuals and the cost of "transportation between places of lodging * * * and places where meals are taken".  Id., sec. 3.02(3), 2005-1 C.B. at 342.

The per diem method is available to employees only if their employers pay a per diem allowance in lieu of reimbursing the actual expenses an employee pays while traveling away from home. Id., sec. 1, 2005-1 C.B. at 341. The Federal per diem rates for M&IE for localities outside the continental United States (OCONUS) are established by the Secretary of Defense for nonforeign locations (i.e., Hawaii) and the Secretary of State for foreign locations.[8] Id., sec. 3.02(1)(b), 2005-1 C.B. at 342. The OCONUS M&IE rates are updated monthly. Id. The full applicable Federal M&IE rate is available for a full day of travel from 12:01 a.m. to 12 midnight and three-fourths of the applicable rate is available for each partial day in which the employee is away from home. Id., sec. 6.04, 2005-1 C.B. at 347-348.[9]

To illustrate, in 2005 petitioner departed Newark on April 22 at 6:46 p.m. en route to Zurich, Switzerland. Petitioner returned to Newark from Zurich on April 24 at 1:43 p.m. As a

_____

[8] The OCONUS M&IE rates for nonforeign locations (i.e., Hawaii) can be found on the U.S. Department of Defense Web site at http://www.defensetravel.dod.mil/perdiem/perdiemrates.html. The OCONUS M&IE rates for foreign locations can be found on the U.S. Department of State Web site at http://aoprals.state.gov/web920/per_diem.asp.

[9] Although Rev. Proc. 2005-10, sec. 6.04, 2005-1 C.B. 341, 347-348, permits proration of the Federal M&IE rate "using any method that is consistently applied and in accordance with reasonable business practice" the facts in this case do not suggest that any other method alluded to in the revenue procedure would be in petitioner's best interest.

result of this trip, petitioner is allowed 1 full day for April 23 and 2 partial days (.75) for April 22 and 24, or 2.5 times the applicable Federal M&IE rate. The applicable Federal M&IE rate for Zurich for April 2005, according to the U.S. Department of State Web site, is $136. Thus, the M&IE rate allowable for this trip is $340 ($136 X 2.5 = $340). By comparison, petitioner departed Newark on July 1 at 7:30 p.m. en route to Zurich and returned to Newark on July 3 at 1:52 p.m., generating a per diem expense of 2.5 times the applicable Federal M&IE rate. The applicable Federal M&IE rate for Zurich for July 2005 is $123. Thus, the M&IE rate allowable for this trip is $307.50 ($123 x 2.5 = $307.50). In order to determine the total Federal M&IE allowable for 2005, this procedure must be completed for each of petitioner's trips during that year. In applying this process to petitioner's trip records, the total Federal M&IE allowable for 2005 is $13,199.

The Federal M&IE of $13,199 is the amount that should have been reported on Line 5 of petitioner's Form 2106. This amount is reduced by the amount that Continental reimbursed petitioner for her per diem allowance ($6,207) to arrive at $6,992. Because petitioner is an employee subject to the DOT hours of service limits, petitioner is entitled to deduct 70 percent of this amount, or $4,894. Accordingly, of the $12,987 petitioner

claimed as a deduction for M&IE, petitioner is entitled to a deduction of $4,894.

## III. Tax Preparation Fees

A taxpayer may deduct ordinary and necessary expenses incurred in connection with the determination, collection, and refund of taxes. See sec. 212(3). Such deductible expenses include expenses incurred in connection with the preparation of tax returns. See sec. 1.212-1(l), Income Tax Regs.

Where a taxpayer establishes that she has incurred certain kinds of expenses but is unable to substantiate the precise amount of the expenses, we may estimate the amounts of the deductible expenses. See Cohan v. Commissioner, 39 F.2d at 544.

Petitioner claimed a deduction of $135 for tax preparation fees. At trial, petitioner provided credible testimony that she incurred expenses for the preparation of her tax return of $135. Accordingly, we hold that petitioner is entitled to a deduction of $135 for tax preparation fees. See id.

### Conclusion

We have considered all of the arguments made by petitioner, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.