Bernard M. Rice v. Commissioner.
Rice v. Commissioner
Docket No. 6770-65.
United States Tax Court
T.C. Memo 1967-54; 1967 Tax Ct. Memo LEXIS 206; 26 T.C.M. (CCH) 295; T.C.M. (RIA) 67054; March 22, 1967
Bernard M. Rice, pro se, 3046 Roosevelt, Detroit, Mich. Herbert A. Seidman, for the respondent. KERN
Memorandum Findings of Fact and Opinion Respondent has determined a deficiency in petitioner's income tax liability for the year 1963 in the amount of $681. This deficiency results from (1) the disallowance of a deduction of $1,000 claimed by petitioner for "being deprived of domicile rights and deterioration of personal possessions through Federal Government interference," (2) the disallowance of a deduction of $2,349.22 claimed by petitioner for "wage losses - lack of tools," (3) the disallowance of a deduction of $2,833.60 claimed by petitioner for "legal expenses incurred in 1963," and (4) the disallowance of an additional $600 exemption for blindness claimed by petitioner. Petitioner has alleged error with regard to all of these disallowances. Findings of Fact The parties have filed a short stipulation setting out facts concerning petitioner's place of residence and the filing of his income tax return for the taxable year. Three exhibits were attached to and identified in the stipulation, viz., (1) a copy of petitioner's income tax return for 1963; *208 (2) a copy of a statement by a medical records clerk of the Wills Eye Hospital of Philadelphia, Pennsylvania, dated October 9, 1964, concerning an examination of petitioner's eyes made on March 2, 1955; and (3) a copy of petitioner's motor vehicle operator's license for the years 1963-1964, issued by the State of Pennsylvania. We find the facts to be as stipulated and incorporate the stipulation herein by this reference, together with the exhibits identified therein. Petitioner lives in Detroit, Michigan, and filed his Federal income tax return for the calendar year 1963 with the district director at Detroit. During that year he was "engaged in work * * * as a maintenance mechanic for a Detroit downtown hotel." [1] On his return he reported the receipt of income from such employment in the sum of $4,680.78 (from which Federal income tax of $475.30 was withheld) and also reported the receipt of $236, as income from a Detroit construction company and of $42 from "Misc. Spare Time Carpentry." When petitioner was a child, he was hit in one eye by a playmate. On October 9, 1964, a medical *209 records clerk of the Wills Eye Hospital of Philadelphia, signed a certificate which reads as follows 2, 1955 at which time he gave a history of injury to right eye at age of 2 years. Visual acuity was found to be 20/1200 right eye and 20/30-2 left eye. Examination revealed old dense corneal scar right eye and presbyopia left eye. Clinical records only date back to 1949 and Hospital information to 1928 (Hospital information from 1928 to 1948 are [is] on index cards consisting of diagnosis, surgery performed, and dates of hospitalization). Petitioner had a motor vehicle operator's license for the years 1963-1964, issued to him by the State of Pennsylvania, which had the notations thereon, "Blind Right Eye" and "Equip with Outside Mirror." During 1963 petitioner's vision was greatly impaired. At some time not disclosed by the record but apparently before the taxable year, petitioner "lost [his carpenter tools] to a small contractor" in connection with a "[dispute] over a job." Petitioner instituted some kind of legal action in the courts of Michigan for the recovery of the tools, but up to the date of the trial herein no "ruling" had been made in such litigation. Also, *210 at some undisclosed time, petitioner filed an action of some kind relating to these tools in the United States District Court in Detroit. Without specifying the time, petitioner testified that this case "was dismissed as grievous." Being deprived of his tools, petitioner "lost a card" and could not work under the union wage scale of $4.58 an hour. During the taxable year petitioner did some carpentry work for "around $2.50 an hour." In his income tax return for 1963 petitioner reported the receipt of wages from "McLean Constr. Co. Detroit 3 Mich." and "Misc. Spare Time Carpentry" in the respective amounts of $236 and $42, in addition to wages of $4,680.78, received from a Detroit hotel. In the same return petitioner claimed under "Other deductions," a deduction of $2,349.22 on account of "Wage Losses - Lack of Tools." In 1951 or 1952 petitioner's mother died and left to him a life interest in a small two-story house located in the town of Mt. Carmel, Pennsylvania, where petitioner then lived. In 1955 petitioner left that town to seek work in Detroit, Michigan. In 1955 or 1956 a dispute arose between petitioner and his brother with regard to the house in Mt. Carmel. The exact nature *211 of this dispute is not disclosed by the record herein. Shortly thereafter the United States Post Office Department took some action or made some statement, the exact nature of which is not disclosed by the record, which caused petitioner to feel aggrieved. In 1955 or 1956 petitioner's brother caused padlocks to be placed on the doors of the Mt. Carmel house in which petitioner had left furniture, kitchen equipment, books, and clothing. Most of these possessions were removed from the house by petitioner's wife in 1965. In his tax return for 1963 petitioner deducted the sum of $1,000 as "Other interest expense" with the explanation, "Being Deprived of Domicile Rights and Deterioration of Personal Possessions Thru Fed. Govt Interference." In connection with his dispute with his brother and the related dispute with the Post Office Department, petitioner, on dates undisclosed by the record herein, filed two actions in the state courts of Pennsylvania (one of which was begun in December 1961) and an action of some kind in the United States Court of Appeals. In connection with this litigation and the actions filed by him in Michigan with regard to the loss of his tools, petitioner paid *212 certain expenses at times not specified in the record herein. Petitioner was not able to employ an attorney and consequently represented himself in all of this litigation. Petitioner estimated that he spent at least 400 hours in 1963 in connection with his various law suits and that his time was worth $5 an hour. Therefore he included the sum of $2,000 in the item of $2,833.60, deducted by him in his tax return for that year as "Legal Expenses Incurred in 1963." Opinion KERN, Judge: Based upon the documentary evidence and the somewhat confused testimony of petitioner, [2] we have found as a fact that petitioner's vision was greatly impaired during the tasable year. However, in spite of our careful and sympathetic examination of the evidence bearing on this issue, we are unable to conclude that petitioner, who has the burden of proof, has proved that within the taxable year "his central visual acuity does not exceed 20/200 in the better eye with correcting lenses, or if his visual acuity is greater than 20/200 but is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees." This is the definition *213 of blindness set out in section 151(d)(3), I.R.C. 1954, which by its terms provides that for purposes of the subsection granting the additional exemption for blindness, "an individual is blind only" if his visual acuity is that which falls within the above-quoted definition. The certificate of the medical records clerk of the Wills Eye Hospital, set out in our findings, is to the effect that the "visual acuity" of petitioner's left or "better" eye was found in 1955 to be 20/30-2. Although the certificate states that the "examination revealed * * * presbyopia left eye" and petitioner testified in general terms concerning his "failing eyesight," there is no evidence that the visual acuity in petitioner's "better eye" did not exceed 20/200 with correcting lenses during the taxable year. Accordingly, petitioner has failed to prove in this proceeding that he is entitled to the additional exemption for blindness provided by section 151(d)(1), I.R.C. 1954. *214 Petitioner has also failed to prove that the respondent erred in disallowing the deductions here in question. The nature of these claimed deductions and the facts relating to them as established by the record are not clear. It would appear that the deduction claimed as a result of the loss of petitioner's tools consists not of the cost basis to petitioner of the tools which seem to have been lost in a prior year, but of the amounts of additional income which petitioner estimates that he would have realized in 1963 if his tools had not been lost. Such amounts of unrealized (and taxed) income cannot be deducted as losses. See Palmer Hutcheson, 17 T.C. 14, 19. The facts and arguments relating to the deductions claimed on account of petitioner's dispute with his brother and with the Post Office Department are even more confused. Certainly, petitioner has failed to prove that any losses which he may have sustained as a result of such disputes were sustained by him during the taxable year. With regard to the deduction claimed on account of litigation expenses, petitioner has not pointed out, either at the trial or on brief, the section of the Internal Revenue Code under which *215 he contends that this deduction is allowable. However, since it is claimed in his return as a deduction with the explanation "Legal Expenses Incurred in 1963," we assume that it was claimed under either section 162(a) or section 212, which provides for the allowance as deductions of "the ordinary and necessary expenses paid or incurred during the taxable year" (1) in carrying on a trade or business, (2) for the production or collection of income, or (3) for the management of property held for the production of income. With regard to the miscellaneous expenses involved in petitioner's litigation (other than the value placed by him on his own time), there is no evidence that they were paid during the taxable year. Insofar as this deduction consisted of petitioner's estimate of the monetary value of his own time devoted to the litigation indulged in by him, it is obvious that it did not constitute an expense "paid or incurred" by him. [3] Furthermore, there is nothing in the record to indicate that the expenses (with the possible exception of those incident to the litigation involving the tools) were made in carrying on a trade or business or for the production or collection of income *216 or for the management, conservation or maintenance of property held for the production of income; [4] and there is nothing in the record which would permit us to allocate some part of the expenses to the litigation involving the tools and another part to petitioner's other litigation. Decision will be entered for the respondent. Footnotes
1. Petitioner's request for a finding of fact to this effect was agreed to by respondent.↩
2. On direct examination petitioner testified on this issue as follows: "THE COURT: You were blind in 1963? "THE WITNESS: Yes. "THE COURT: Do you plan to testify with regard to the condition of your eyes in 1963? "THE WITNESS: I do not have the records with me. I was poked in the eye at the age of three by a playmate. There is no record at the Wills Hospital where I was confined, 1964 I received a statement I have taken an eye test over there in hopes of having something done about my failing eyesight. My vision is stated as 20-1200. I have a cataract or scar on this side. I can see everything plainly but I cannot read, it is blurred, so I can distinguish colors, I cannot do any driving. This has kept me out of many better paying jobs." On cross-examination his testimony on this issue was as follows: "Q. Mr. Rice, with respect to your exemption for blindness, you testified when you were a small child you had an injury to your right eye. There was no injury, however, to your left eye, is that correct? "A. No, but Wills Eye Hospital classified that this eye is failing. I have depended on it for 55 years on one eye. It is a medical term used, I can't pronounce it but it is a failing of eyesight due to advance in age. I have got to wear glasses driving, watching TV, at night, and so forth. But I am a very heavy reader so it impedes my reading. In the daytime I can't recognize acquaintances across the street, my sight is failing. "Q. You do drive a car? "A. Yes, but I haven't driven a car for several years now. "Q. But you have a driver's license? "A. I have a Pennsylvania license. "Q. You can read without glasses with your left [eye]? "A. No. "Q. Before when you were reading from your return you were not using glasses, were you? "A. No, sir, I do not need glasses for reading."↩
3. Cf. Ralph S. Clark, T.C. Memo. 1966-22↩. 4. Cf. Merritt M. Meredith, 47 T.C. 441↩(Jan. 31, 1967).