# United States Tax Court

T.C. Memo. 2025-27

DAVID NWAFOR,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 12005-22.                                   Filed March 26, 2025.

————

David Nwafor, pro se.

*Kyu-Jung Kahn*, *Gretchen W. Altenburger*, and *Michael T. Garrett*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

URDA, *Judge*:  Petitioner, David Nwafor, challenges a notice of deficiency issued by the Internal Revenue Service (IRS) that determined tax deficiencies of $64,110 and $71,105 for 2019 and 2020, respectively, as well as accuracy-related penalties under section 6662(a).[1]  During these years, Mr. Nwafor was the sole proprietor of a Colorado engineering firm named Gordon Group, LLC (Gordon Group).  In calculating Gordon Group's net profits on his tax returns, Mr. Nwafor took into account (1) the value of the time he spent in developing a mathematical modeling program to be used in his engineering work, (2) payments to contract labor, (3) expenditures to buy office equipment and a car, and (4) adjustments and discounts given to customers.  The

———

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary values to the nearest dollar.

[*2] IRS disallowed each of these amounts in full. We will sustain most of the IRS's deficiency and penalty determinations, with the precise amounts to be calculated under Rule 155.

## FINDINGS OF FACT

We held trial in this case and draw the following facts from the parties' pleadings, the stipulations (and accompanying exhibits), and the evidence admitted at trial. Mr. Nwafor lived in Colorado when he timely filed the petition.

I. *Mr. Nwafor and Gordon Group*

During the years at issue Mr. Nwafor owned Gordon Group, an engineering firm based in Colorado Springs, which operated on the cash basis method of accounting. Gordon Group worked on both conventional and nonconventional engineering projects.

A. *Conventional Projects and Contract Labor*

Gordon Group's conventional work focused on the development of Colorado properties into single-family mountain homes, a life cycle that usually took two to five years. To facilitate its projects, Gordon Group hired contractors that would provide predevelopment services.

In 2019 Gordon Group contracted with Range West, Inc. (Range West), BHH Partners (BHH), and Engineering DesignWorks, Inc. (DesignWorks), for services including site analysis, land surveys, and structural design. Payments on these contracts were not made until the following year, however. Specifically, Gordon Group paid (1) $3,000 to Range West in February 2020, (2) $9,600 to DesignWorks in October 2020, and (3) $40,241 to BHH in October 2020.

To help with its 2020 work, Gordon Group again turned to BHH for structural design, paying $41,699 in several installments over the year. It also retained the services of Theobald Engineering & Construction (Theobald), which received $5,050 in October 2020. Gordon Group contracted with Deeper Green Consulting (Deeper Green) and Marcin Engineering (Marcin) in 2020 for environmental and site analyses, but both were paid in 2021.

**[*3]** B. *Nonconventional Work*

In addition to his development projects Mr. Nwafor was interested in building on certain theoretical concepts to gain non-conventional engineering work involving aircrafts, defense structures, and various other complex designs. To that end, Mr. Nwafor spent time developing a mathematical model (called Finite Element Analysis or FEA) and a related computer program that would "determine how an object will behave under forces, under weight, under any application of force," as Mr. Nwafor put it at trial. Mr. Nwafor asserted that he spent 1,302.49 hours on this work and that his hourly rate was $285, a total value of $371,210. The record contains no indication that Gordon Group paid him for his work in this regard or recognized this amount as a company liability.

C. *Discounts*

To stay competitive, Mr. Nwafor applied a flat discount to Gordon Group's prices for "engineering service[s]" at the beginning of both 2019 and 2020. Specifically, Gordon Group lowered its prices (from those Mr. Nwafor ostensibly first contemplated for each year) by 11% in 2019 and 6.5% in 2020. These price adjustments were internal, and Gordon Group's customers were unaware that they were being charged a lower rate.

D. *Equipment Purchases*

Mr. Nwafor purchased a variety of equipment in 2019 and 2020. In 2019 he bought a 2012 Toyota Camry for $9,500 and office chairs from Amazon for $302. The next year he purchased two Samsung Galaxy phones for $2,706 and various items from IKEA for $2,846.

II. *Tax Reporting*

On his 2019 and 2020 tax returns, Mr. Nwafor reported gross income of $188,786 and $229,917, respectively. A large part of Mr. Nwafor's gross income stemmed from the net profits of Gordon Group, which were $188,786 for 2019 and $228,765 for 2020. On Mr. Nwafor's Schedule C, Profit or Loss From Business, he reported gross sales of $495,852 for 2019 and $607,828 for 2020.

Mr. Nwafor then reduced the amounts of gross sales by, inter alia, returns and allowances, to calculate Gordon Group's gross income, and then by expenses including depreciations and contract labor, to derive

[*4] each year's net profit.  Mr. Nwafor reported returns and allowances of $54,937 for 2019 and $39,048 for 2020 on his Schedule C.  These amounts represented approximately 11% and 6.5% of the gross sales for each year, respectively.

At trial Mr. Nwafor explained that Gordon Group's 2019 depreciation expenses of $46,923 consisted of $37,121 related to the time he spent developing the computer modeling program (derived using a six-year schedule) and $9,802 related to the purchase of the Toyota Camry and office chairs.  For 2020 he explained that the depreciation expenses of $79,862 reported on his return consisted of $74,242 related to the computer modeling program and $5,620 for the purchase of the Samsung phones and certain items from IKEA.  Although the returns reflected the total depreciation amounts, the 2019 return broke these amounts into the categories of engineering testing equipment ($28,936) and structural design software ($17,987), while the 2020 return used the categories of equipment and assets ($49,257) and FEA/FEM engineering technology ($30,605).  Finally, the returns reported contract labor costs of $51,128 and $67,327, respectively.

III.    *Notice of Deficiency*

On March 2, 2022, the IRS issued a notice of deficiency disallowing the amounts reported for depreciation, contract labor, and returns and allowances.  The effect of the IRS's disallowance was tax deficiencies totaling $64,110 for 2019 and $71,105 for 2020 along with section 6662(a) accuracy-related penalties equaling $12,822 and $14,221 for each tax year, respectively.

OPINION

I.    *Legal Standards*

A.    *Burden of Proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct.  Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).  The taxpayer bears the burden of proving those determinations erroneous.  *See* Rule 142(a). Although section 7491(a)(1) provides that the burden may shift to the Commissioner in certain circumstances, Mr. Nwafor does not contend, and the evidence does not establish, that the burden shifts here.

**[\*5]** B. *Recordkeeping*

The taxpayer bears the burden of establishing his entitlement to deductions allowed by the Code and substantiating the amounts of his claimed deductions by keeping and providing books of accounts or records sufficient to establish "matters required to be shown by such person in any return of such tax or information." Treas. Reg. § 1.6001-1(a); *see also* I.R.C. § 6001; *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). The failure to keep and present accurate records counts heavily against a taxpayer's attempted proof. *See Rogers v. Commissioner*, T.C. Memo. 2014-141, at \*17. Unless specifically enumerated in the Code, no deductions are allowed for personal, living, or family expenses. *See* I.R.C. § 262(a).

For some types of expenses, lack of substantiation can be overcome. *See, e.g.*, *Phillips v. Commissioner*, T.C. Memo. 2013-215, at \*22–23. "[I]f a taxpayer establishes that a deductible expense has been paid but cannot establish the precise amount of the deductible expense, the Court may estimate the amount." *Id.* at \*23 (citing *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). "In making the estimate, the Court bears heavily against the taxpayer who failed to more precisely substantiate the expense." *Id.* (citing *Cohan v. Commissioner*, 39 F.2d at 544); *see also Rogers*, T.C. Memo. 2014-141, at \*17. "The Court will not estimate a deductible expense unless the taxpayer presents a sufficient evidentiary basis on which an estimate can be made." *Phillips*, T.C. Memo. 2013-215, at \*23 (citing *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985)); *see also Rodriguez v. Commissioner*, T.C. Memo. 2009-22, 2009 WL 211430, at \*4 (stating, with respect to the *Cohan* rule, that "we can't just guess").

II. *Analysis*

Mr. Nwafor and the IRS dispute four aspects of his 2019 and 2020 tax reporting related to Gordon Group: (1) expenses related to the mathematical modeling program; (2) expenses with respect to the Toyota Camry, Samsung phones, and office expenses; (3) the contract labor expenses; and (4) the returns and allowances. We will address each in turn.

A. *Modeling Software Expenses*

Mr. Nwafor argues that Gordon Group was entitled to deduct $37,121 for 2019 and $74,242 for 2020 to account (in part) for the time he spent in developing mathematical modeling software that would

**[\*6]** assist on nonconventional engineering projects. During the years at issue, section 174(b) provided an amortization deduction for "research or experimental expenditures which are paid or incurred by [a] taxpayer during such taxable year in connection with the taxpayer's trade or business."

As we have recognized in the context of the business expense deduction under section 162,[2] "[l]abor performed by a taxpayer does not constitute an amount 'paid or incurred' by him," and the taxpayer is not entitled to deduct the value of such labor. *Rink v. Commissioner*, 51 T.C. 746, 753 (1969); *see also Grant v. Commissioner*, 84 T.C. 809, 820 (1985), *aff'd*, 800 F.2d 260 (4th Cir. 1986) (unpublished table decision); *Rice v. Commissioner*, T.C. Memo. 1967-54, 1967 Tax Ct. Memo LEXIS 206, at \*10 ("Insofar as this deduction consisted of [the taxpayer's] estimate of the monetary value of his own time devoted to the litigation indulged in by him, it is obvious that it did not constitute an expense 'paid or incurred' by him."). "Just as 'imputed income' arising from the benefit a taxpayer's own services yield to him is not taxable under our system of taxation, neither is the 'imputed expense' arising out of his exertions a proper deduction from income." *Rink*, 51 T.C. at 753; *see also Remy v. Commissioner*, T.C. Memo. 1997-72, 1997 WL 52446, at \*5. To hold otherwise would be to allow a business deduction for unpaid compensation which was never reported as income. *See, e.g.*, *Hutcheson v. Commissioner*, 17 T.C. 14, 19 (1951); *see also Remy v. Commissioner*, 1997 WL 52446, at \*4–6.

We reach the same conclusion in the section 174 context. Essentially, Mr. Nwafor seeks to deduct the value he puts on his own time in developing the mathematical modeling software, but he falls short of showing any amounts actually "paid or incurred," as we have interpreted that phrase in the past.[3] We see no reason to ascribe a different meaning in the section 174 context. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning . . . ."); *see also Pulsifer v. United States*, 144 S. Ct. 718, 735 (2024) ("The principle is mostly applied to terms with some heft and distinctiveness, whose use drafters are likely to keep track of and standardize."). Mr.

---

[2] Section 162 provides in pertinent part "[t]here shall be allowed as a deduction all the ordinary and necessary expenses *paid or incurred* during the taxable year in carrying on any trade or business." (Emphasis added.)

[3] Gordon Group, a single-member limited liability company owned by Mr. Nwafor, is considered a disregarded entity as it did not elect otherwise. *See* Treas. Reg. §§ 301.7701-2(a), 301.7701-3(b)(1).

**[\*7]** Nwafor thus is not entitled to deduct the value of his time under section 174.

  B.  *Office, Telephone, and Car Expenses*

  Mr. Nwafor also seeks to deduct for 2019 and 2020 certain office expenses, as well as the purchases of two Samsung phones, and a 2012 Toyota Camry. Section 162 generally allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business. An expense is ordinary if it is "normal, usual, or customary" within a particular trade or business. *Deputy v. du Pont*, 308 U.S. 488, 495 (1940). It is necessary if it is appropriate and helpful for the business. *Welch v. Helvering*, 290 U.S. at 113. "To prove entitlement to deduct an expense, the taxpayer must prove not only the fact of the expenditure but also the business purpose . . . of the expense." *Rogers*, T.C. Memo. 2014-141, at \*18.

  At trial, Mr. Nwafor claimed he spent $302 in 2019 and $2,914 in 2020 for office equipment. Mr. Nwafor credibly testified that he bought items on Amazon.com and from IKEA during the years at issue to outfit his office, such as chairs, lamps, tables, and storage units. He supported this testimony with documentation including receipts from Amazon.com and IKEA, as well as photographs purporting to show some of the purchased items in his office. Although we credit Mr. Nwafor's testimony by and large, he appears to have double-counted certain items and also to have included other items without a clear business purpose, such as laundry baskets and hangers, when calculating his 2020 expenditures. Removing these amounts, we conclude that Mr. Nwafor has substantiated office equipment expenses of $302 for 2019 and $1,548 for 2020.

  Turning to the Samsung phones, Mr. Nwafor failed to establish a business purpose. He testified at trial that he bought one for himself and one for his staff, but he failed to provide any details or support that would allow us to credit his explanation. Without an explanation how he used the cellphones as part of his business, who used them (particularly since he had no employees during the years at issue), or even a contemporaneous telephone bill that showed who paid for service, Mr. Nwafor has not carried his burden to show the phone purchase represented a business, rather than personal, expenditure.

  We likewise conclude that Mr. Nwafor failed to substantiate the business purpose of the 2012 Toyota Camry that he bought in 2019.

[*8] Section 274(d) sets forth heightened substantiation requirements with respect to passenger vehicles, among other things. *See* I.R.C. § 280F(d)(4). No deduction is allowed for such expenses "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement:" (1) the amount of the expense, (2) the time and place of the travel or the use of the property, (3) the business purpose of the expense, and (4) the business relationship of the persons using the property. I.R.C. § 274(d); *see Eze v. Commissioner*, T.C. Memo. 2022-83, at *6, *aff'd per curiam*, No. 23-1062, 2023 WL 6972451 (4th Cir. Oct. 23, 2023).

At trial, Mr. Nwafor failed to supply records or evidence corroborating his contention that he used the Toyota Camry for business purposes. His own testimony belied this assertion and suggested that he used the Toyota Camry for personal reasons at times. And his 2019 and 2020 tax returns reported that he used a Range Rover primarily for business, raising significant, unresolved questions about what role, if any, the Toyota Camry played. In short Mr. Nwafor has failed to satisfy the strict substantiation requirements of section 274(d) to deduct the expenses he incurred in buying that car.

C.    *Contract Labor Expenses*

Based on the evidence adduced at trial, the Commissioner has taken the position that Mr. Nwafor has substantiated contract labor expenses for the tax year 2020: (1) $49,841 in payments to BHH and DesignWorks, which had originally been reported on Mr. Nwafor's 2019 tax return, and (2) $46,749 in payments to BHH and Theobald, which had been reported on his 2020 tax return.[4] The Commissioner's concession leaves only a few stragglers: (1) a $3,000 payment to Range West in 2020 for 2019 work; (2) 2021 payments to Deeper Green and Marcin for work completed in 2020; and (3) payments to Mr. Garratt Hasenstab for work purportedly performed in 2020.

We first conclude that Gordon Group is entitled to a deduction under section 162 for its 2020 payment to Range West. Mr. Nwafor credibly testified that he paid Range West for surveys that were necessary to Gordon Group's property development business. He supported this testimony with both an invoice and a payment receipt.

---

[4] The Commissioner's concession did not extend to reported mailing expenses of $232 related to BHH. Mr. Nwafor fails to explain the nature of these expenses, much less establish that they were ordinary and necessary business expenses of Gordon Group, and thus is not entitled to deduct this amount.

[*9] Although we agree with the Commissioner that Gordon Group, a cash basis taxpayer, may not deduct for 2019 what it paid in 2020, Mr. Nwafor has offered adequate substantiation to recognize the payment as a deductible business expense for Gordon Group in 2020 (a year also before us).

Mr. Nwafor is not entitled to recognize the remaining payments as deductible expenses for either of the years at issue. The payments to Deeper Green and Marcin both occurred in 2021, and Gordon Group accordingly could not deduct the expenses for 2020. *See* Treas. Reg. §§ 1.446-1(c)(1)(i), 1.461-1(a)(1); *see also Harwood v. Commissioner*, T.C. Memo. 2022-8, at *13 ("As a general rule, a cash basis taxpayer deducts expenses for the year of payment."). At trial Mr. Nwafor also asserted that Gordon Group paid $17,794 to Mr. Hasenstab during 2020 for the coordination of certain development work, supporting his testimony with a spreadsheet of purported payments and Mr. Hasenstab's Form W-9, Request for Taxpayer Identification Number and Certification, which was signed on April 20, 2022. Mr. Nwafor's unverified spreadsheet and vague testimony fail to adequately substantiate the year and amounts of any payments, or the business purpose of any work performed by Mr. Hasenstab.

D. *Returns and Allowances*

Mr. Nwafor finally argues that Gordon Group discounted its rates for engineering services to stay competitive in the market and is entitled to reduce its gross sales to account for sale allowances of 11% and 6.5% for 2019 and 2020, respectively. Mr. Nwafor also asserts that Gordon Group is entitled to reduce its gross sales by customer-specific refunds provided when a customer was dissatisfied.

Gross income includes all income from whatever source derived. I.R.C. § 61. The computation of income of a Schedule C business takes into account, among other things, returns and allowances to reduce gross sales. *See Pittsburgh Milk Co. v. Commissioner*, 26 T.C. 707, 716 (1956) (citing *Am. Lace Mfg. Co. v. Commissioner*, 8 B.T.A. 419 (1927)). As the U.S. Court of Appeals for the Ninth Circuit later put it:

> The *Pittsburgh Milk* doctrine has the obvious merit of reflecting economic reality. The seller would make no sale at the list price; only at the net price can he attract the customer. The net price is the true consideration, regardless of the parties' bookkeeping hypocrisies.

[*10] *Max Sobel Wholesale Liquors v. Commissioner*, 630 F.2d 670, 672 (9th Cir. 1980), *aff'g* 69 T.C. 477 (1977).

Mr. Nwafor is not entitled to reduce Gordon Group's gross sales by either the general discounts or the customer-specific allowances claimed. As to the former, Mr. Nwafor testified that he applied "discounts" at the beginning of the year when setting the rate for Gordon Group's services for the year. As we understand it, he decided upon prices that seemed attractive, even if they were less than what he believed Gordon Group's work to be truly worth. The discounts thus were already incorporated in the lower sale prices charged just as if Gordon Group had charged the higher rate and then applied, for each customer, returns and allowances. No netting thus is required.

Mr. Nwafor likewise fails to show that he is entitled to reduce Gordon Group's gross sales by customer-specific discounts. Mr. Nwafor did not testify as to the amounts of any such discounts and did not offer any substantiation whatsoever. And our review of the total amounts of returns and allowances, combined with Mr. Nwafor's testimony regarding the generalized discounts, leaves us with considerable doubt whether any customer-specific discounts were reported.

III. *Accuracy-Related Penalties*

Section 6662(a) imposes an accuracy-related penalty of 20% on any portion of an underpayment of tax required to be shown on a return. This penalty applies, inter alia, to the portion of any underpayment attributable to negligence. I.R.C. § 6662(b)(1). Negligence includes the failure to properly substantiate items claimed on the return. Treas. Reg. § 1.6662-3(b)(1).

The Commissioner bears the burden of production with respect to a taxpayer's liability for the section 6662(a) penalty and must produce evidence that the imposition of the penalty is appropriate. *See* I.R.C. § 7491(c); *see also Higbee v. Commissioner*, 116 T.C. 438, 446 (2001).[5] Should the Commissioner satisfy this burden, the burden shifts to Mr. Nwafor to prove that he had reasonable cause and acted in good faith with respect to the underpayments. *See* I.R.C. § 6664(c); *Higbee*, 116 T.C. at 449.

---

[5] The record establishes that the Commissioner met his burden of production under section 6751(b), which Mr. Nwafor does not contest.

11

**[\*11]** The Commissioner has met his prima facie burden to show negligence. Mr. Nwafor failed to substantiate his deductions claimed for the taxable years at issue, and the Commissioner thus has established negligence. *See* Treas. Reg. § 1.6662-3(b)(1); *see also Velez v. Commissioner*, T.C. Memo. 2018-46, at *10 ("[The Commissioner] satisfied his burden of production with regard to negligence by establishing that [the taxpayer] did not maintain sufficient records to support the . . . deduction."). Mr. Nwafor does not contest this point, nor does he suggest that he satisfies the reasonable cause exception to the penalty.

To reflect the foregoing,

*Decision will be entered under Rule 155.*